THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIS JOHNSON, Appellant.

First Department, July 3, 1958.

*William Rand, Jr.,* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*N. T. Gilroy, Jr.,* of counsel (*Florence M. Kelley,* attorney), for appellant.

BERGAN, J.  Defendant has been convicted of felonious possession of heroin, a narcotic drug, with intent to sell and has been sentenced to prison for 7½ to 15 years.  The drug was not shown to have been physically in the possession of the defendant, but was concealed on the person of one Charline

Woodall, a woman accompanying the defendant when the arrest was made.

The case against defendant rests very heavily on the testimony of the woman; and the problem which becomes important on the appeal is whether the court was required, without prompting or exception by defendant's counsel, to have told the jury to regard the woman as an accomplice; or to have left it to the jury to determine as a fact whether she was an accomplice; and under either of which instructions to have given the jury adequate advice on the effect of accomplice testimony. The charge to the jury did not deal with this problem; the defendant made no request on this subject; and took no exception directed to the omission.

The duty rests on the Trial Judge to give adequate and balanced instructions to the jury in a criminal case; and if the failure to do this is of sufficient importance, an Appellate Division under its express power of review on appeal " whether any exception shall have been taken or not (Code Prim. Pro., § 527) will examine the charge to the jury to determine if the duty of adequate guidance to the jury has been substantially met. (*People* v. *Kathan,* 136 App. Div. 303; *People* v. *Viscio,* 241 App. Div. 499, 503; *People* v. *Shingles,* 281 App. Div. 647; on the general power of the Appellate Division in this area, cf. *People* v. *Minkowitz,* 220 N. Y. 399, 404.)

Although there is some opinion in the court that the witness Charline Woodall is an accomplice as a matter of law, the majority view is that she is, at least, sufficiently identified with the commission of the crime for which defendant has been convicted to require the submission of her accomplice status to the jury for determination and that the omission to do this is a matter of consequence in the case.

Charline Woodall testified that shortly before the time here in issue, the defendant had asked her to sell narcotics and that she had refused; but that the day before the arrest " he asked me did I want to carry some drugs for him, and I hesitated * * * I needed some drugs, and I thought about it." She was then asked what defendant said she was " to get out of this " and she answered that defendant told her " it would be worth my while." She testified she met the defendant; that he had a conversation on the street with two people; that after the conversation defendant " told me to ' come on ' " and immediately handed her " the stuff ".

When she and defendant were arrested closely after this, the heroin was found by police in her possession. The police testified that just before the arrest they had observed the

defendant in conversation on the street with a man and a woman; that there was " an exchange of hands " between the man and the defendant, or a " touching of hands " between them; and that during this time Charline Woodall " stood near " the defendant " off to the side slightly ". After the arrest of defendant there were some admissions by him to the police which could be found to have been an acceptance of responsibility for possession by Woodall; but on the important question of whether it was a possession for sale, the defendant's admissions are at least open to differing interpretations.

If Charline Woodall knew that the drugs given to her by the defendant immediately after receipt by him were for the purpose of sale, she was a principal in the possession for such a purpose, and, of course, an accomplice. It cannot be argued seriously that she lacked knowledge of such a purpose. She was directly present with the defendant in the touching of hands or exchange of hands to which the police testified between the defendant and the man on the sidewalk and which the People contend constituted proof of an acquisition of drugs by defendant for the purpose of sale; and she immediately thereafter took from the defendant physical possession of these same drugs.

Before she went into the enterprise " to carry some drugs " for defendant he had asked her to sell drugs. Indeed, the District Attorney in summation made the point that she " participated " in order to " get a free shot in performing this duty ". This is certainly an argument based on the assumption she knew the possession was for the purpose of sale; an argument further developed in summation by the District Attorney who told the jury that her need for drugs was such that " In desperation, sick and ill  *  *  *  she was reduced to doing that which she had refused to do for this defendant on a previous occasion."

All this cannot be regarded as other than a contention that Woodall participated in a possession of the drugs for the purpose of sale. Decisions such as *People* v. *Pasquarello* (282 App. Div. 405) which held that the purchaser of narcotics was not an accomplice of the seller because he could not be indicted as a principal have no pertinency here where the acts of the witness, to have any significance, must be treated as amounting to intimate and active participation in the crime.

The obligation thus seems to us to have been cast on the Judge to instruct the jury on the rule applicable to accomplice testimony. The omission became a matter of prime importance

in the case, because not only did the sole direct proof of delivery of the drugs to the witness Woodall by defendant depend on her testimony; but its delivery to her immediately as part of and consequent upon receipt by defendant for purposes of sale also depended on her testimony; and it was she and not defendant who was in physical possession of the drug for which he has been convicted of possession for the purpose of sale. Furthermore the purpose of possession for sale was importantly dependent on the admission which the witness Woodall attributed to the defendant that he stated he wanted her to act with him for the purpose of sale of narcotics.

Her testimony thus lies close to the center of gravity of the case; in no view of the proof can it be regarded as unimportant, even though the bare possibility might exist that there could be a conviction without it. The defendant correctly argues, therefore, that in the absence of a charge with respect to the necessity of corroborating accomplice testimony, it cannot be determined on review whether "the jury found that any evidence other than Woodall's testimony tended to connect defendant-appellant with the commission of the crime, nor can it be determined whether the jury believed any testimony other than that of accomplice Woodall." (Cf. Code Crim. Pro., § 399.)

The effect of this omission to state the rule to be applied to the witness Woodall in the role of an accomplice was magnified somewhat by the definitive instructions which the court did give the jury on her role as a possessor of the drug. The charge swung far wide of the simple rule which was first stated by the court in effect that the jury might deem the physical possession of the drug by the witness Woodall the possession of it by the defendant. The court continued in its instruction that the People claim "that the defendant aided and abetted Charline Woodall to commit the crime and that he counseled and procured her to commit the crime."

This is not what the People contended; they contended, rather, as we understand their position as explained on appeal, that the crime was being committed by the defendant and that Woodall was aiding but without knowledge that the purpose of possession was for sale.

Perhaps the confusion in the charges grew from the language of the indictment which, in the first count, on which defendant has been convicted, contains the words "and to aid, abet and directly or indirectly counsel" etc. But a careful reading of these words makes it evident that the pleading was not thereby referring to aiding and abetting possession for the purpose

of sale; but was addressed to the intent and purpose with which possession was had, and was descriptive of the kinds of sale, barter and exchange which might be embraced, including that by aiding and abetting, etc., in such a contemplated sale. This is quite a different thing, and the language of the indictment is reflected from the criminal statute (Penal Law, § 1751, subd. 2) which makes it plain what is meant.

Nevertheless the court instructed the jury that "if he aided and abetted this woman in committing the crime or if he counseled or procured her to commit the crime, he is guilty as a principal." The court closed this subject by saying that "Under these circumstances" the possession by Woodall "becomes also the possession of the defendant. So much for possession".

But on the subject of possession the court had just finished telling the jury in effect that if they found the woman had committed the crime of possession with intent to sell which was the only count of the indictment referring to "aiding and abetting", they might then find the defendant guilty of possession with intent to sell by helping her, a theory for which the People did not contend, and which in effect left it open to the jury to find that if defendant abetted Woodall in her possession as a principal they might convict defendant of possession with intent to sell. To the omission in the charge there is thus added a confusing concept irrelevant to this case; and we feel required to say that both points taken in their cumulative effect indicate a new trial should be had.

The judgment should be reversed on the law and in the exercise of discretion and a new trial ordered.

VALENTE, J. (dissenting). In the main, the majority predicates a reversal of the conviction on the failure of the trial court to submit for the jury's determination the accomplice status of the witness Woodall and to instruct on the necessity for corroboration of accomplice testimony in the event they found that she was.

Despite the absence of any request by the defendant for such instructions and the failure to except to the omission so to charge, it is nevertheless being held that the lack thereof deprived the defendant of a substantial right which necessitates a new trial.

We agree that the witness Woodall was not an accomplice as a matter of law. Certainly she was not so connected with the crime charged in the first count of the indictment — possession with intent to sell — that she might herself have been

convicted at common law as a principal or as an accessory before the fact (*People* v. *Sweeney,* 213 N. Y. 37).

Whether her status as an accomplice should have been tendered to the jury as a question of fact is a much closer question. Better practice may have dictated the submission of the issue to the jury. But before determining whether there was reversible error, we must examine the proposition, not *in vacuo,* but in the setting of the particular trial. It must be stressed that the defendant insisted he had nothing to do with the possession of the narcotics which were found on Woodall. His testimony and the argument of his counsel to the jury suggested that the defendant was a victim of a "frame-up". Had Woodall's accomplice status been left as a question of fact for the jury, the court would have been obliged to instruct the jury that if they concluded that the defendant possessed the drugs with intent to sell, they would then have to determine whether Woodall was an accomplice; and if they determined that she was, they would then examine all the other evidence, apart from her testimony, to determine whether there was sufficient inculpatory proof tending to connect the defendant with the commission of the crime. The court then would have been obliged to point out the testimony that might be considered by the jury as corroborative, such as the observations of the police officers, the admissions of the defendant, and the circumstances of the arrest.

The mere statement of these requirements indicates how devastating their enunciation to the jury would have been to the defense proffered by the defendant. Considering the vehement denials of the defendant of any connection with Woodall, except in her role of prostitute, the last thing defense counsel would have wanted in this trial was a charge which referred to Woodall as an accomplice, even hypothetically and with proper caveats to the jury. In effect, it would have been tantamount to a direction to the jury to return a guilty verdict.

While the record does not disclose any express waiver of the charge, it is not difficult to surmise what the answer of competent defense counsel would have been had inquiry been made whether such instructions were desired. But waiver may be inferred from conduct as well as from words. We view the failure to request the instructions, and the absence of an exception, as a deliberate trial tactic embarked on by proficient counsel to avoid the undermining of the only defense he had in a desperate case. In reversing the judgment of conviction, the majority permits the defendant knowingly to reap the

benefits of the lack of a charge on accomplice testimony at the trial, and then, when convicted, to transform that advantage into a successful claim by a new attorney of the denial of a fair trial. Where an experienced judge in a criminal trial of a defendant, represented by able counsel, does not charge on accomplice testimony in a case where it is apparent that the matter is pertinent to the issues, we should hesitate to brand the omission as an error in the absence of an exception or request to so charge, especially where the record discloses an obvious reason for a defendant's desire to avoid such instructions.

Our only concern on this appeal should be therefore whether there was sufficient testimony in the record to constitute corroboration of Woodall's testimony—and there was such an abundance of it—that we can conscientiously say that the verdict would have been the same with or without the charge and that the defendant was not deprived of any substantial right. For the reasons indicated, we would affirm.

BOTEIN, P. J., and BREITEL, J., concur with BERGAN, J.; VALENTE, J., dissents and votes to affirm in opinion, in which RABIN, J., concurs.

Judgment reversed upon the law and in the exercise of discretion and a new trial ordered.